**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 20-13**

―――――――――

THOMAS ALEXANDER PORTER,

Petitioner - Appellant,

v.

RICK WHITE, Warden, Red Onion State Prison,

Respondent - Appellee.

―――――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:12-cv-00550-HEH)

―――――――――

Argued:  December 7, 2021                    Decided:  January 12, 2022

―――――――――

Before KING, THACKER, and HARRIS, Circuit Judges.

―――――――――

Affirmed by published opinion.  Judge Thacker wrote the opinion, in which Judge King and Judge Harris joined.

―――――――――

**ARGUED:**  Brian Kenneth French, NIXON PEABODY, LLP, Boston, Massachusetts, for Appellant.  Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Robert E. Lee, Jr., Dawn M. Davison, VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Charlottesville, Virginia, for Appellant.  Mark R. Herring, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

―――――――――

THACKER, Circuit Judge:

Virginia state inmate Thomas Alexander Porter ("Appellant") challenges the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus.  His two juror bias claims, which center on one juror's failure to fully answer three questions asked on voir dire, are at issue in this appeal.  Because we must defer to the district court's finding that the juror was credible when he testified that he did not intentionally withhold information in response to those questions, we affirm.

I.

A.

In 2007, Appellant was convicted of capital murder in Virginia state court for killing a police officer in 2005.  He was sentenced to death.  After unsuccessfully pursuing direct and collateral review of his conviction and sentence in state court, *see Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008) (direct appeal); *Porter v. Warden*, 722 S.E.2d 534 (Va. 2012) (per curiam) (state habeas), Appellant filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus in federal district court in October 2012.  Among numerous other claims, Appellant asserted two juror bias claims -- one of actual bias and another based on *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984).  These juror bias claims stemmed from the failure of one juror, Bruce Treakle ("Juror Treakle"), to disclose in response to voir dire questioning that his brother, Pernell Treakle ("Officer Pernell"), was a law enforcement officer.  The district court granted the respondent's motion to dismiss the petition without an evidentiary hearing or any further discovery.  *Porter v. Davis*, No. 3:12-cv-550-JRS, 2014 WL 4182677 (E.D. Va. Aug. 21, 2014) ("*Porter I*"),

2

*aff'd in part, vacated in part sub nom. Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018). On appeal, we held that the district court's order was not final because it had not addressed Appellant's actual bias claim, so we dismissed the appeal and remanded the case to the district court for further consideration of that claim. *Porter v. Zook*, 803 F.3d 694 (4th Cir. 2015) ("*Porter II*").

The district court dismissed Appellant's actual bias claim after the remand, again without an evidentiary hearing or any other discovery. *Porter v. Zook*, No. 3:12-cv-550, 2016 WL 1688765 (E.D. Va. Apr. 25, 2016) ("*Porter III*"), *aff'd in part, vacated in part,* 898 F.3d 408 (4th Cir. 2018). Appellant appealed the dismissal of that claim and of his earlier claims that were addressed in *Porter I*. We affirmed the district court's dismissal of all of Appellant's claims except his actual bias and *McDonough* juror bias claims, which we remanded for an evidentiary hearing and further discovery. *Porter v. Zook*, 898 F.3d 408 (4th Cir. 2018) ("*Porter IV*").

Discovery following remand revealed that in addition to not disclosing information about his brother Officer Pernell, Juror Treakle withheld information in response to two other voir dire questions. The district court permitted Appellant to amend his § 2254 petition to add these facts. The district court also held an evidentiary hearing. On August 14, 2020, the district court issued an order dismissing Appellant's juror bias claims, denying his § 2254 petition, and denying a certificate of appealability. *Porter v. Gilmore*, 479 F. Supp. 3d 252 (E.D. Va. 2020) ("*Porter V*").

Appellant filed a timely notice of appeal on September 14, 2020. We granted a certificate of appealability on August 10, 2021.

3

B.

Appellant's juror bias claims are based on Juror Treakle's failure to truthfully answer three questions asked to the venire during voir dire:

- The prosecutor asked "whether you, any member of your immediate family or close friends has [sic] ever been the victim of a violent crime." J.A. 55.[1] When one potential juror asked the prosecutor to define the term "violent crime," the prosecutor responded, "Crime against a person. In other words, an assault or robbery. It could be a homicide." *Id.* at 56. Juror Treakle did not respond to this question, although one of his brothers, Ronald Treakle ("Ronald"), was arrested and found guilty of assault after he physically attacked another brother, Calvin Treakle ("Calvin"), on at least two occasions, and his parents died in a car accident purportedly caused by a drunk driver.

- The prosecutor also asked, "Have you or any member of your immediate your [sic] family or close friend ever been arrested or prosecuted for the alleged commission of a criminal offense?" J.A. 57. Juror Treakle did not respond to this question, either, although at least four of his family members -- his son, his brothers Ronald and Calvin, and his niece -- had been arrested and prosecuted for various criminal offenses.

- Appellant's counsel asked, "Have you, any member of your family or close personal friend worked for or with any law enforcement organization, either as an employee

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

or on a volunteer basis?" J.A. 74–75. Juror Treakle disclosed that his nephew was a police officer in the county where the trial was being held. Upon further questioning, he denied that this relationship would affect his ability to be an impartial juror. However, Juror Treakle did not mention that he had several other family members, including his brother Officer Pernell and three of his cousins, who also worked in law enforcement.

Juror Treakle testified at his October 2019 deposition, which was conducted during further discovery before the district court in this case, that his failure to fully respond to these questions "wasn't deliberate at all." J.A. 2052. Although he agreed that he "hadn't thought very hard about [his] answers to each of those questions," he explained, "It didn't dawn on me to think about those because it happened in the past and it just didn't dawn on me." *Id.* Juror Treakle also testified at his July 2019 deposition, which was likewise conducted during further discovery before the district court in this case, that he "did not listen" to the other jurors' affirmative answers to the questions, and although he "probably heard what they were saying, [he] just didn't comprehend . . . what they were saying." *Id.* at 1904–05.

## II.

We review de novo the district court's denial of Appellant's 28 U.S.C. § 2254 petition. *Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021) (quoting *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012)). In doing so, "we review the district court's 'legal conclusions de novo and findings of fact for clear error.'" *Wolfe v. Clarke*, 691 F.3d 410, 423 (4th Cir. 2012) (quoting *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003)).

5

"A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

We are also bound by § 2254(d), "which circumscribes a federal court's ability to issue a writ of habeas corpus" for a petitioner in state custody, when it applies. *Owens v. Stirling*, 967 F.3d 396, 410 (4th Cir. 2020). However, in a previous appeal of this case, we determined that Appellant's juror bias claims are not subject to § 2254(d). *See Porter v. Zook*, 898 F.3d 408, 425, 430–31 (4th Cir. 2018). Accordingly, we do not apply this deferential standard of review in this appeal.

### III.

"[T]he Sixth Amendment [to the United States Constitution], made applicable to the states through the Fourteenth Amendment, requires that a state provide an impartial jury in all criminal prosecutions." *Jones v. Cooper*, 311 F.3d 306, 310 (4th Cir. 2002) (internal citation omitted). "If even one partial juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Id.* (alteration and internal quotation marks omitted). Appellant asserts that his Sixth Amendment right to an impartial jury was violated because Juror Treakle sat on the jury that convicted him. He contends that Juror Treakle's failure to fully answer the three voir dire questions demonstrates both actual bias and a successful juror bias claim under the test articulated in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984).

6

A.

Like the district court, we begin with Appellant's actual bias claim.  Actual bias, or "bias in fact," exists when "a juror, because of his or her partiality or bias, [is] not 'capable and willing to decide the case solely on the evidence before [him or her].'" *Porter v. Zook*, 898 F.3d 408, 423 (4th Cir. 2018) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).  Stated differently, a juror is actually biased when he cannot be impartial.  *See United States v. Turner*, 389 F.3d 111, 117 (4th Cir. 2004) ("[A] juror is impartial only if he can lay aside his opinion and render a verdict based on the evidence presented in court." (quoting *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984))).

In rejecting Appellant's actual bias claim, the district court distinguished between extrinsic bias -- "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury," *Remmer v. United States*, 347 U.S. 227, 229 (1954) -- and intrinsic bias -- "the general body of experiences that jurors are understood to bring with them to the jury room," *Warger v. Shauers*, 574 U.S. 40, 51 (2014).  The district court observed that there was no evidence of any improper external influence on Juror Treakle, and it specifically found that Juror Treakle did not hear or see anything about Appellant's crimes prior to the trial and that Juror Treakle never discussed the details of Appellant's trial with his brother Officer Pernell.  *See Porter v. Gilmore*, 479 F. Supp. 3d 252, 281–83 (E.D. Va. 2020) ("*Porter V*").

The district court acknowledged that Appellant's "contention that Juror Treakle omitted material information in response to the voir dire questions . . . involves potential intrinsic bias." *Porter V*, 479 F. Supp. 3d at 284.  However, the district court found that

7

Juror Treakle's failure to fully answer the three questions was unintentional and that he did not deliberately omit material information when giving his responses. *Id.* at 285–94. Although the facts here are certainly suspect, we are mindful of the standard of review, and we discern no *clear error* in these findings with respect to any of the three voir dire questions.

1.

Turning first to the question about whether Juror Treakle or any of his family members or close friends had been victims of violent crimes, the district court found that Juror Treakle did not intentionally fail to disclose that his brother Ronald had physically attacked his brother Calvin on multiple occasions or that his parents were killed in a crash purportedly caused by a drunk driver.

Specifically, the district court found that Juror Treakle was not "subjectively aware that his brother Calvin had been a victim of a violent crime" because Juror Treakle "was not familiar with the details of the [first] incident [in which his brother Ronald assaulted his brother Calvin], when it occurred, or the extent of any injury" and "did not know about a second assault." *Porter V*, 479 F. Supp. 3d at 293. Indeed, consistent with the district court's findings, Juror Treakle testified at his deposition that he did not consider the "disagreement[s]" between Calvin and Ronald to be "assault" and that he didn't think about the incidents, which occurred more than a decade before Appellant's trial, because he did not associate with Ronald much and they happened "[t]oo far -- long ago." J.A. 1958, 1967.

8

The district court also found that Juror Treakle's "knowledge of [his parents' car accident] was limited, and that he did not view [it] as a violent crime." *Porter V*, 479 F. Supp. 3d at 294. Again, the district court's findings are supported by Juror Treakle's deposition testimony: Juror Treakle testified only that his aunt told him that his parents had been killed by "a drunk driver [who] was speeding or racing during that Christmas holiday back in 1977," when Juror Treakle was a teenager. J.A. 1875.

In sum, the district court reasonably concluded that Juror Treakle did not knowingly fail to disclose this information in response to the voir dire question about whether Juror Treakle or any of his family members or close friends had been victims of violent crimes.

Appellant attempts to discredit the district court's findings in this regard by manufacturing inconsistencies in Juror Treakle's testimony. For instance, Appellant contrasts Juror Treakle's testimony that he was not thinking about the incidents involving Calvin and Ronald during voir dire with his ability to remember them during his deposition more than a decade after the trial. But the fact that Juror Treakle recalled the incidents during his deposition does not bear on whether he deliberately omitted that information during voir dire. Appellant has not identified any evidence suggesting that Juror Treakle withheld information when answering the voir dire question about whether he or any of his family members or close friends had been victims of violent crimes to conceal bias or to secure a seat on Appellant's jury. Therefore, the district court properly held that Appellant had not demonstrated actual bias with regard to this question.

9

2.

Turning next to the question about whether Juror Treakle or any of his family members or close friends had ever been arrested or prosecuted for a criminal offense, the district court likewise found that Juror Treakle did not intentionally fail to disclose that his son, his brothers Ronald and Calvin, and his niece had all been prosecuted for various criminal offenses. Having considered the testimony of Juror Treakle, the district court stated:

> Although Juror Treakle's silence with respect to this question provided a false assurance to counsel during voir dire that he did not have family members who had been arrested or prosecuted, Juror Treakle's silence was not a knowingly false response. Juror Treakle did not think about these family members during voir dire.

*Porter V*, 479 F. Supp. 3d at 290–91. Again, consistent with the district court's finding, Juror Treakle testified during his deposition that he "just didn't think about saying anything" in response to this voir dire question because he "just never thought about -- stuff that happened in the past." J.A. 2020. He testified that his son had spent some time in jail and on probation for drug charges as a teenager a decade before the trial, and he seemed to know generally that his brothers and niece had been involved in criminal proceedings but did not know or recall many details. Juror Treakle avowed that it "didn't even dawn on [him] to talk about them at all" during voir dire. *Id.* at 1903.

Appellant again attempts to undercut the district court's findings by pointing to Juror Treakle's ability to recall his relatives' criminal offenses during his deposition. However, Juror Treakle acknowledged that these incidents happened only after being

10

directly asked about them and after Appellant's counsel provided documentation for Juror Treakle to review. That context bolsters, rather than undermines, the district court's findings because Juror Treakle was unable to articulate the details of his relatives' criminal offenses absent prompting from Appellant's counsel. More importantly, Appellant has again not identified any evidence demonstrating that Juror Treakle intentionally failed to disclose information when answering the question about whether Juror Treakle or any of his family members or close friends had ever been arrested or prosecuted for a criminal offense in order to conceal bias or to secure a seat on Appellant's jury. As such, the district court likewise properly held that Appellant had not demonstrated actual bias with respect to this question.

3.

Finally, turning to the question about whether Juror Treakle or any of his family members or close friends worked in law enforcement, the district court found that Juror Treakle was not "intentionally dishonest" when he failed to disclose that his brother Officer Pernell and several of his cousins were employed by law enforcement agencies. *Porter V*, 479 F. Supp. 3d at 285.

As to Juror Treakle's cousins, the district court found that he "was not close with these cousins, rarely saw them, and he did not think of these cousins 'at all' during voir dire or trial." *Porter V*, 479 F. Supp. 3d at 286. This is consistent with Juror Treakle's deposition testimony. Juror Treakle testified that he didn't think to mention his cousins because he did not "associate with them all that much" and "never thought about them at

11

all." J.A. 1863, 1897. Indeed, Juror Treakle had difficulty even remembering the name of his cousin who worked for the Federal Bureau of Investigation.

Appellant faults Juror Treakle for not thinking very hard about his answer to this voir dire question and for carelessly failing to provide information about his cousins, but, again, this lends credence to the district court's determination that Juror Treakle's failure to mention them was inadvertent. And, again, Appellant has not identified any evidence indicating that Juror Treakle intentionally failed to disclose that his cousins worked for law enforcement agencies in an effort to conceal bias or to secure a seat on Appellant's jury.

Juror Treakle's failure to disclose that his brother Officer Pernell was a police officer presents a more difficult question. The district court found, as with respect to Juror Treakle's omission of his cousins, that Juror Treakle did not intentionally withhold information about Officer Pernell in response to the voir dire question about whether he or any of his family members or close friends worked in law enforcement. *Porter V*, 479 F. Supp. 3d at 286. The district court reasoned that Juror Treakle "readily admitted that he had a close family relative [his nephew] in law enforcement," "freely admitted to [Appellant's] habeas counsel that his brother [Officer] Pernell worked in law enforcement," and "steadfastly believed that he had mentioned or thought he had mentioned [Officer Pernell] during voir dire." *Id.* Juror Treakle indeed testified during his deposition that he thought he had mentioned Officer Pernell during voir dire, but he "might have made -- made a mistake by being nervous and forgot to mention his name." J.A. 1894. He stated, "I thought I did [mention Officer Pernell]. There was so much going on at that time going through my mind, I just -- just slipped my memory." *Id.* at 1899.

12

At odds with Juror Treakle's testimony, Officer Pernell testified during the evidentiary hearing that Juror Treakle told him he had been "summoned for jury duty," and Officer Pernell told Juror Treakle "that if he told the jury committee that he had a brother that was a police officer he might not get selected to serve on it." J.A. 1676. Juror Treakle, on the other hand, testified during his deposition that he did not talk to anyone except his wife about his jury service. The district court acknowledged Officer Pernell's testimony but downplayed its importance, finding that at the time Juror Treakle discussed his jury service with Officer Pernell, "Juror Treakle did not know what case he would serve on or if he would even be selected as a juror." *Porter V*, 479 F. Supp. 3d at 272.

Appellant complains -- and rightfully so -- that the district court did not resolve the conflict between Officer Pernell's testimony and Juror Treakle's testimony. But in finding that "Juror Treakle's nondisclosure of [Officer Pernell] was inadvertent," the district court plainly credited Juror Treakle's testimony that he thought he had mentioned Officer Pernell in response to the question about whether he or any of his family members or close friends worked in law enforcement. *Porter V*, 479 F. Supp. 3d at 273. That is, the district court, after hearing testimony from both Juror Treakle and Officer Pernell, found that Juror Treakle was credible when he testified that he believed he had disclosed that his brother Officer Pernell was a police officer. While we may have made a different decision in the face of the testimony of a police officer versus Juror Treakle, we must defer to the district court's credibility determination. *Teleguz v. Zook*, 806 F.3d 803, 811 (4th Cir. 2015) ("[T]he court below, and not the reviewing court, weighs the credibility, and we generally do not review credibility determinations." (internal quotation marks omitted)). Therefore,

13

we hold that the district court did not clearly err by finding that Juror Treakle did not intentionally withhold information about Officer Pernell during voir dire.

Of course, as the district court acknowledged, "an actual bias claim may succeed 'regardless of whether the juror was truthful or deceitful'" in giving his voir dire answers. *Porter v. Zook*, 803 F.3d 694, 698 (4th Cir. 2015) ("*Porter II*") (quoting *Jones*, 311 F.3d at 310). Here, Appellant simply asserts that Juror Treakle's dishonesty demonstrates actual bias. He has not pointed to any evidence aside from Officer Pernell's testimony to demonstrate such dishonesty, and the district court found that Juror Treakle was not knowingly dishonest. Accordingly, the district court properly concluded that Appellant had not established actual bias with respect to the question about whether Juror Treakle or any of his family members or close friends worked in law enforcement.

4.

Appellant also argues that Juror Treakle's pattern of withholding information in response to voir dire questions, his admission that he was not really focusing on the voir dire questions, and the volume of information withheld are sufficient to demonstrate actual bias. The district court rejected this argument based on its finding "that Juror Treakle did not repeatedly lie or intentionally conceal material information in his voir dire to secure a spot on the jury." *Porter V*, 479 F. Supp. 3d at 295. The district court elaborated:

> [W]ith respect to two of the questions, Juror Treakle was not aware that his answers were false. He truthfully answered that he had a family member in law enforcement and steadfastly believed that he mentioned his brother. The record establishes that Juror Treakle did not realize or understand that his answer should have been "yes" to the question about family members

14

who had been victims of violent crime. With respect to the question about whether anyone in his family had been arrested or prosecuted, Juror Treakle simply did not think of these individuals and had no motive to lie about the answer to secure a seat on the jury.

*Id.*

We likewise reject Appellant's argument. The Supreme Court has emphasized that a juror cannot be expected to behave according to some consummate ideal: "There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it." *Tanner v. United States*, 483 U.S. 107, 120 (1987). That Juror Treakle may have been careless when considering his responses to the voir dire questions, as Appellant argues, does not indicate that he had a preconceived notion about the result of Appellant's trial or that he could not decide Appellant's guilt or innocence based on the evidence adduced at trial. In short, carelessness is not equivalent to partiality. *See Jones*, 311 F.3d at 313 ("Misstatements on a jury questionnaire . . . are troubling, but do not, standing alone, indicate juror bias."). And although a juror's dishonesty during voir dire "is evidence of bias," *Conaway v. Polk*, 453 F.3d 567, 588 (4th Cir. 2006) (quoting *Burton v. Johnson*, 948 F.2d 1150, 1159 (10th Cir. 1991)), critically, the district court here found that Juror Treakle was not being dishonest when he failed to fully answer the three voir dire questions.

Accordingly, like the district court, we decline to infer that Juror Treakle was actually biased solely because he failed to disclose information in response to the three voir

15

dire questions, where the district court found "that Juror Treakle did not repeatedly lie or intentionally conceal material information in his voir dire to secure a spot on the jury." *Porter V*, 479 F. Supp. 3d at 295.

B.

We next address Appellant's juror bias claim based on *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984). To succeed on a *McDonough* claim, a litigant must demonstrate that (1) "a juror failed to answer honestly a material question on *voir dire*" and (2) "a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. Even when a litigant makes this showing, however, "a juror's bias is only established under *McDonough* if the juror's 'motives for concealing information' or the 'reasons that affect [the] juror's impartiality can truly be said to affect the fairness of [the] trial.'" *Conaway*, 453 F.3d at 588 (quoting *McDonough*, 464 U.S. at 556). Appellant argues that the district court erred by requiring him to prove as much in order to succeed on his *McDonough* claim. But we have made clear that "[t]he inquiry into whether a trial's fairness was affected essentially constitutes a third part" of the *McDonough* test. *Id.* at 585 n.20 (citing *Jones*, 311 F.3d at 313).

Appellant focuses on the second *McDonough* element and argues that the district court erred by limiting its analysis only to actual and implied bias when considering whether Juror Treakle would have been subject to a valid for-cause challenge if he had fully answered the three voir dire questions. Significantly, Appellant relies on the same arguments to support both his *McDonough* claim and his actual bias claim and essentially contends that Juror Treakle should have been dismissed for cause because he was actually

16

biased.  Therefore, having disposed of Appellant's actual bias claim, we need not decide whether the district court applied the correct standard to Appellant's *McDonough* claim.

We hold, as did the district court, that Appellant has not established that Juror Treakle would have been dismissed for cause if he had not withheld any information in response to the three voir dire questions.  Notably, Appellant does not assert that had Juror Treakle fully answered those questions, his responses would have revealed actual bias.  Instead, Appellant argues, just as he does in support of his actual bias claim, that Juror Treakle's failure to fully answer the questions is itself evidence of actual bias.[2]  As we have already explained, Appellant's actual bias claim runs headlong into the district court's findings that Juror Treakle was credible and did not intentionally withhold information during voir dire, and the fact that Juror Treakle may have been careless in considering his responses to the voir dire questions does not indicate partiality.  His *McDonough* claim fails for the same reasons.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[2] Appellant also argues that Juror Treakle's carelessness in considering his responses to the voir dire questions suggests that he was unable or unwilling to follow the trial court's instructions.  But *McDonough*'s second element focuses on whether the juror's "correct response [to a voir dire question] would have provided a valid basis for a challenge for cause."  464 U.S. at 556.  Therefore, Appellant's argument makes no sense: if Juror Treakle had disclosed all the information when answering the three questions, Appellant would surely not be asserting that Juror Treakle should have been dismissed for cause because he was unable or unwilling to follow the trial court's instructions because he would have actually followed the trial court's instructions.